# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

REMINGTON TYPEWRITER COMPANY *vs.* CITY OF REVERE.

Suffolk. October 6, 1933. — December 28, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Municipal Corporations,* Officers and agents, Contracts. *School and School Committee. Contract,* Validity, Ratification.

A purchase by the city of Revere in 1921 in violation of § 38 of its charter, St. 1914, c. 687, of thirty typewriters, when sufficient funds had not been appropriated by the city council to pay therefor, was not ratified by the city by its duly authorized officers, so that it became a valid contract under which the city became liable to pay a balance due, merely by reason of the facts that in 1924, under an appropriation made by an order of the city council to pay unpaid bills which were not otherwise designated in the order, and under an appropriation for text books and supplies, the mayor and city auditor approved an order for the payment of a part of the balance due on the price of such typewriters, and that in 1925 the school committee issued an order to exchange twenty-two of such typewriters for twenty-two of the same make, on the basis of which an exchange was made and a balance due on that transaction was paid in cash, a balance still remaining unpaid on the 1921 transaction: the budget and municipal indebtedness acts cannot be thus circumvented.

CONTRACT. Writ dated September 19, 1927.

In the Superior Court, the action was heard by *Keating,* J., without a jury, upon an agreed statement of facts.

Material facts are stated in the opinion. The judge found for the defendant and reported the action for determination by this court.

*L. E. Duane,* for the plaintiff.

*W. P. Murray,* for the defendant.

CROSBY, J. This is an action of contract to recover a balance alleged to be due. of the price of thirty typewriters furnished to the school department of the defendant. The case is submitted upon a statement of agreed facts containing the following and other recitals: On or about October 20, 1921, the plaintiff received an order from the school department for thirty Remington typewriters to be used only for school purposes, the price to be $70 each, it being agreed that a credit be allowed for the return of six old typewriters by the defendant to the plaintiff of $10 each, making the total amount payable $2,040 less a payment in cash by the defendant to the plaintiff of $1,058, leaving a balance due of $982; this sum with interest thereon the plaintiff seeks to recover in this action. It was a term of the order that the typewriters were not to be paid for until after January 1, 1922. At the time the order was placed sufficient funds had not been appropriated by the city council to pay for these typewriters. On April 1, 1925, the school committee issued an order for the exchange of twenty-two used Remington typewriters for twenty-two new ones of the same make. All the used typewriters so exchanged were part of the order of October 20, 1921, and they had been in the schools since that date. The agreed price for the new typewriters was $70 each, and the plaintiff made an allowance of $35 on each used typewriter exchanged. The defendant paid the plaintiff $770, and there was $770 due the plaintiff on the exchange. At that time there was more than sufficient funds in the text book and supply account to meet the balance of this account.

The city charter of the defendant (St. 1914, c. 687, § 38) provides, in part, as follows: "No sum appropriated for a specific purpose shall be expended for any other purpose; and no expenditure shall be made or liability incurred by

or in behalf of the city until an appropriation has been duly voted by the council, sufficient to meet such expenditure or liability, together with all prior unpaid liabilities which are payable out of such appropriation, except in accordance with the written recommendation of the mayor to the council, approved by a majority of the council, the vote to be taken by yeas and nays: provided, however, that after the expiration of the financial year and until the passage of the annual appropriations, the mayor may authorize each of the administrative officers and boards to incur liabilities to an amount not exceeding one fifth of the total sum appropriated for the same purpose in the preceding year, and such liabilities shall be paid from the annual appropriations subsequently made. . . ." There is nothing in the record to show, and we do not understand the plaintiff to contend, that the case comes within the terms of the proviso of the statute. It is governed in principle by *Parkhurst* v. *Revere*, 263 Mass. 364, 369–370. It is the contention of the plaintiff that the transaction entered into by the parties on October 20, 1921, was thereafter ratified and adopted by the city by its duly authorized officers and became a valid and binding contract under which the defendant became liable to pay the balance claimed to be due the plaintiff. The plaintiff contends that any invalidity of the original contract was removed by the acts of the school committee, the city council and the mayor in the year 1924. It appears that in January of that year the school committee requested of the city council an appropriation of $15,986.24 to pay unpaid bills as listed. Among those bills was the bill of the plaintiff in the sum of $2,040. The city council appropriated $7,500 in response to this request. When this amount was so appropriated the city council did not designate which claims should or should not be paid. At the same time it appropriated $27,438.60 for text books and supplies. The record further recites that "Bill for the above mentioned typewriters was approved by the city warrant dated March 31, 1924, which was signed by the mayor and city auditor in the amount of $1,058 on account of the purchase price

of said typewriters, and this amount of $1,058 was paid to the plaintiff."

We are of opinion that the warrant above referred to did not constitute an appropriation. An appropriation required action on the part of the city council, which does not appear. If it be assumed that the city council with the approval of the mayor, after the year 1921, attempted to make an appropriation for the purpose of paying the claim of the plaintiff, such action was unauthorized and illegal. No authority in law was vested in it to make an appropriation after the year 1921 for the payment of an indebtedness incurred during that year. It was said in *Parkhurst* v. *Revere*, 263 Mass. 364, at page 370: "However, the provisions of G. L. c. 44 entitled 'Municipal Finance,' were intended to place municipal expenditures upon a strict budget basis. The school committee is required by § 49 of St. 1914, c. 687, to submit in January of each year an estimate of the amount of money necessary for the proper maintenance of the schools during the succeeding financial year; it is thus required to plan for its expenditures in advance. Obviously the legislative purpose cannot be accomplished if any department is allowed to make expenditures which were not included in the estimate submitted by it." It is provided by St. 1914, c. 687, § 21, that "The council shall appropriate annually, before the first day of March, in accordance with the provisions of section twenty of chapter seven hundred and nineteen of the acts of the year nineteen hundred and thirteen, and amendments thereof, the amount necessary to meet the expenditures of the city for the current financial year." The purchase of the typewriters in 1921 was in the nature of a current expenditure for that year and could be paid for only out of the tax levy for that year. It was said by this court in *Flood* v. *Hodges*, 231 Mass. 252, at page 256, in referring to St. 1913, c. 719, called the municipal indebtedness act (G. L. [Ter. Ed.] c. 44), and which was amended by St. 1915, c. 138, § 1: "It is an act of broad application, and all provisions of general and special laws inconsistent therewith, save in respects not here material, are repealed.

§ 22. The manifest purpose of the framers of the act was to set rigid barriers against expenditures in excess of appropriations, to prevent the borrowing of money for current expenses, to confine the making of long time loans strictly to raising money for permanent improvements, and in general to put cities upon a sound financial basis so far as these ends can be achieved by legislation. The budget system was one of the means adopted. The responsibility for framing and presenting the budget is placed on the mayor. He is required, within a brief time after the annual organization of the city government, 'to submit to the city council the annual budget of the current expenses of the city.' The budget consists of an itemized and detailed statement of the money required to meet all the current expenses of the city for the year, with clear specifications of the amounts to be expended for each particular purpose. The preparation of a budget of necessity implies a comprehensive survey of all the needs for expenditures for the ordinary municipal operations and an intelligent and discriminating calculation of necessary charges. That is made an executive function. The power of the mayor in this direction, even by way of supplementary budgets, comes to an end when the tax rate has been fixed for the year. . . ." The provision of St. 1913, c. 719, § 20, limiting the power to make supplementary appropriations to the time before "the tax rate for the year shall be fixed" was repealed by St. 1915, c. 138, § 1, and is not in G. L. c. 44, § 32. There is nothing in the provisos in St. 1915, c. 138, which authorized an appropriation for the payment claimed to be due the plaintiff. It follows that in the case at bar the mayor or the city council or both of them had no authority to make an appropriation for the payment of a current indebtedness incurred in 1921 after the close of that year. The purchase of twenty-two additional typewriters in 1925 under an arrangement by which the full purchase price less an allowance for the return of old typewriters and the balance in cash was to be paid was fully completed. This transaction cannot be held to be a ratification and confirmation of the original contract which

made the defendant liable for the purchase made in 1921. The budget and municipal indebtedness acts cannot be thus circumvented. *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353. *Burt* v. *Municipal Council of Taunton*, 275 Mass. 535. *Leonard* v. *School Committee of Springfield*, 241 Mass. 325. The trial judge upon the pleadings, the agreed facts, and his findings and rulings rightly found for the defendant. In accordance with the terms of the report the entry must be

*Judgment for the defendant.*